UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x
TESLA WALL SYSTEMS, LLC,

        Plaintiff,

        -v-

RELATED COMPANIES, L.P. and NEW
HUDSON FACADES LLC,

        Defendants.
------------------------------------

17-cv-5966 (JSR)

OPINION AND ORDER

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED:

JED S. RAKOFF, U.S.D.J.

On August 7, 2017, Tesla Wall Systems, LLC ("Tesla") filed the instant action against Related Companies, L.P. ("Related") and New Hudson Facades LLC ("NHF") seeking relief for defendants' misappropriation of trade secrets in violation of the Defend Trade Secrets Act ("DTSA") (18 U.S.C. § 1836) and Related's false and misleading statements in interstate commerce in violation of the Lanham Act (15 U.S.C. § 1125). See Am. Compl. ¶¶ 141-154, 160-165, Dkt. 14. Tesla also brought seven state law claims for unfair competition, tortious interference with contract, breach of fiduciary duty, aiding and abetting breach of fiduciary duty, breach of the covenant of good faith and fair dealing, common law fraud, and unjust enrichment. See id. ¶¶ 155-159, 166-211.

This is the fourth suit arising out Tesla's "demise" in 2014, see id. ¶ 7, and the second pending before this Court, see Related Companies, L.P. v. Ruthling, No. 17 Civ. 4175 (JSR) (S.D.N.Y.

1

2017). Defendants now move to dismiss Tesla's claims on various grounds including improper claim splitting, res judicata, laches, and failure to state a claim upon which relief can be granted. See Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Complaint ("Def. Mem."), Dkt. 22.

For the reasons set forth below, the Court dismisses counts III, VIII, and IX of plaintiff's complaint for failure to state a claim and count IV as time barred, but denies defendants' motion to dismiss counts I, II, V, and VI.[1]

The pertinent allegations, as set forth in plaintiffs' amended complaint, are as follows:

Related is a New York-based, multi-billion dollar real estate developer. Am. Compl. ¶¶ 1, 9. Tesla is a Nevada-based, vertically-integrated "curtain wall" supplier that, for a period of several years, supplied high-end glass facades to three of Related's building projects. Id. ¶¶ 8, 25-29. NHF is a New York-based affiliate of Related that manufactures and installs curtain wall for Related's building development projects. Id. ¶ 10.

Tesla is majority-owned by its founder Carleton Ruthling. Related owns a non-controlling interest in Tesla, holds one of the

_____

[1] Tesla has voluntarily withdrawn count VII, its claim against Related for breach of the covenant of good faith and fair dealing, rendering defendants' motion to dismiss this claim moot. See Plaintiff Tesla Wall Systems LLC's Memorandum of Law in Opposition to Defendants' Motion to Dismiss ("Pl. Mem.") at 19, Dkt. 26.

three seats on its Board of Directors, and has the right to approve certain corporate actions.

Pursuant to a "Term Sheet" executed in 2013, Tesla is contractually obligated to distribute its cash in a "waterfall" as follows: (1) in payment of taxes; (2) in repayment of cash advances from Related, with accrued interest at 9%; (3) 60% to Related and 40% to Skye Holdings [controlled by Ruthling] until existing loans from Related are paid off [approximately $6 million]; and (4) 25% to Related and 75% to Skye Holdings. See Related v. Ruthling, Declaration of Nicholas A. Gravante, Jr. in Support of Plaintiffs' Opposition to Defendant Christopher Du's Motion to Dismiss, Ex. 6, Affidavit of Dr. Carleton Ruthling ¶ 13, Dkt. 69.

Because of a dispute between Ruthling and Related over these terms, Related ended its partnership with Tesla in 2014. Prior to this dissolution and, in or around July 2013, Related, in an effort to acquire Tesla's trade secrets allegedly "began a concerted campaign to induce Budd to leave his position as Tesla's President" and to work for Related to form a competing curtain wall company that would design, manufacture, and install curtain wall at reduced costs. See Am. Compl. ¶ 73. Although Related knew that Budd's employment agreement with Tesla included confidentiality, non-interference, non-competition, and non-solicitation clauses, see id. ¶¶ 65-72, Related nonetheless held numerous secret meetings with him, see id. ¶ 75.

On or about December 13, 2013, while Tesla was supplying curtain wall to Related, and several months before Related indicated it wanted to cease doing business with Tesla, Budd distributed Tesla's business plan and financials to Related executives without Tesla's knowledge or permission. Id. ¶ 84. In January and February, Budd travelled to New York to discuss potential projects for a new, competing company, eventually incorporated as NHF, see id. ¶ 85, and on March 7 Related extended Budd a written offer of employment, see id. ¶ 86.

The next day, Budd tendered his resignation with an effective date of May 8, remaining President of Tesla for a further two months. Id. ¶ 87. During this time, and throughout his six-month non-interference period, Budd and Related worked secretly to develop NHF and, at Related's request, Budd solicited Tesla's U.S. employees in violation of a non-solicitation agreement. Id. ¶ 94. Subsequently, Related induced Budd to breach his obligations to Tesla by requesting and receiving Tesla's confidential information and trade secrets.[2] Id. ¶ 96.

---

[2] Tesla's trade secrets allegedly consist of "the business design and data demonstrating the feasibility, reliability, and cost of building a curtain wall company from the ground up," id. ¶ 108; "information related to its operating practices and procedures, including pricing and billing methods, financing, business plans, and data concerning the strengths and weaknesses of the business model and operations," id. ¶ 109; "technical data, internal pricing information, cost information, business methods and systems, research, engineering designs, product plans, products, services,

4

In 2015, following Tesla's "demise," Related sought to recover $3.3 million that a contractor on a Related building project still owed Tesla in conjunction with Tesla's work on that project. See id. ¶¶ 123-24. In response to Related's request, the contractor sought an executed power of attorney showing that Related had the authority to bill on Tesla's behalf. Id. ¶ 129. As Related could not produce this, Related directed a former Tesla employee working for Related to create a false payment application to submit it to the contractor. Id. ¶ 132. On January 16, 2015, a Related employee accessed Tesla's billing portal without authorization and fraudulently notarized a payment application. See id. ¶¶ 133, 135. Subsequently, Related received the $3.3 million. Id. ¶ 137.

## DISCUSSION

In connection with these allegations, Tesla brings the aforementioned nine claims for relief against Related and NHF. Defendants move to dismiss these claims on various grounds. They argue that plaintiff's Lanham Act, fraud, and unjust enrichment claims (the "fraud claims"), which are related to the $3.3 million defendants allegedly stole, are barred by res judicata, as they should have been raised as counterclaims in a New York State Court

vendor lists, markets, software, inventions, marketing, finances, and other information," id. ¶ 110.

action, The Related Companies, L.P. v. Tesla Wall Systems, LLC, brought by defendants, which resulted in a $15.6 million judgment against Tesla. No. 650778/2015 (N.Y. Sup. Ct. 2015). Plaintiff's remaining claims (its "trade secrets claims"), defendants argue, should have been raised in Tesla Wall Systems v. Budd, which resulted in a final judgment against Related and is pending a retrial on damages. No. 14 Civ. 8564 (LLS) (S.D.N.Y. 2014). Defendants also contend that counts I, III, and VII fail to state a claim and that counts II, IV, V, and VI are time barred.

The Court considers each argument in turn:

## I. **The Fraud Claims**

Counts III, VIII, and IX of plaintiffs' complaint involve payment to Related - by a third-party contractor - of $3.3 million owed to Tesla.

### A. Count III: Lanham Act Violation

Defendants argue that plaintiff's complaint fails to state a claim under the Lanham Act arising out of this incident.

The Lanham Act provides that "any person who, on or in connection with any goods or services . . . uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact or false or misleading representation of fact, which . . . is likely to cause confusion . . . or to deceive as to the affiliation, connection, or association of such person with

6

another person . . . shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act." 15 U.S.C. § 1125(a)(1)(A).

In order to state a Lanham Act claim, Tesla must "show that defendant's use of its mark is likely to cause 'an appreciable number of ordinarily prudent purchaser's 'confusion as to the origin, sponsorship, or approval' of the defendant's product." Louis Vuitton Malletier S.A. v. Warner Bros. Entm't Inc., 868 F. Supp. 2d 172, 177 (S.D.N.Y. 2012) (quoting Savin Corp. v. Savin Group, 391 F.3d 439, 456 (2d Cir. 2004)).

But Tesla makes no allegations that Related used plaintiff's mark "in commerce" either "on goods" – meaning "on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto, or if the nature of the goods makes such placement impracticable, then on documents associated with the goods or their sale, and the goods are sold or transported in commerce" – or "on services" (meaning "used or displayed in the sale or advertising of services"). 15 U.S.C. § 1127.

The Lanham Act is designed to protect "trademark owners against confusion as to 'affiliation, connection, or association' in the marketplace." V&S Vin & Spirit Aktiebolag (Publ) v. Absolute Pub. USA Inc., No. 05 Civ. 4429 (RMB) (RLE), 2005 WL 3272828, at *2 (S.D.N.Y. Nov. 28, 2005), report and recommendation adopted sub nom. V&S Vin & Sprit Aktiebolag (publ) v. Absolute Publ'g USA Inc.,

2006 WL 197001 (S.D.N.Y. Jan. 25, 2006) (quoting 15 U.S.C. §
1125(a)(1)(A) (emphasis added)). Tesla's claim here has nothing to
do with Related's use of Tesla's trademark on its goods or services
in the marketplace. It is more akin to a conversion claim against
Related for misrepresenting to a third-party a right to receive
monies allegedly owed to Tesla. Thus, defendants' motion to dismiss
count III is granted.

## B. Counts VIII and IX: Fraud and Unjust Enrichment

Turning to plaintiff's unjust enrichment and common law fraud
claims, defendants argue that these claims are barred by res
judicata.

Under New York law, "once a claim is brought to a final
conclusion, all other claims arising out of the same transaction
or series of transactions are barred, even if based upon difference
theories or if seeking a different remedy." O'Brien v. City of
Syracuse, 54 N.Y.2d 353, 357 (1981). "While New York does not have
a compulsory counterclaim rule (see, C.P.L.R. § 3011), a party is
not free to remain silent in an action in which he is the defendant
and then bring a second action seeking relief inconsistent with
the judgment in the first action by asserting what is simply a new
legal theory." Henry Modell & Co. v. Minister, Elders & Deacons of
Reformed Protestant Dutch Church of City of N.Y., 68 N.Y.2d 456,
461 (1986) (collecting cases)).

8

Related contends that Tesla remained silent in a state court case brought by Related, which awarded Tesla the same $3.3 million they now bring suit to recover. (In that case, The Related Companies, L.P. v. Tesla Wall Systems, LLC, Related won a $15 million judgment against Tesla, which was $3.3 million lower, before interest, than it otherwise would have been due to the contractor's 2015 payment to Related. See Declaration of Nicholas A. Gravante, Jr. in Support of Defendants' Motion to Dismiss, Exs. 2-3, Dkt. 23.)

Under New York law, even if there is a relationship between the offset in the state court action and the allegations here, Tesla had no obligation to assert its cause of action here as a counterclaim in the prior suit. Motler v. Motler, 60 N.Y.2d 244, 246 (1983) (noting that all counterclaims are permissive and a party may assert his or her claim against the plaintiff as a counterclaim or may bring a separate suit). Thus, defendants cannot avoid liability for fraud by crediting plaintiff in an unrelated contractual dispute under a collateral commercial agreement.

Nevertheless, Tesla cannot recover the $3.3 million in damages alleged in the complaint here because Tesla already recovered this amount in the state court action. "A judgment in one action is conclusive in a later one . . . when the two causes of action have such a measure of identity that a different judgment in the second would destroy or impair rights or interests

established by the first." Schuykill Fuel Corp. v. B. & C. Nieberg Realty Corp., 250 N.Y. 304, 306-07 (1929). Thus, res judicata bars Tesla from claiming these same damages, after it was already awarded those monies in an earlier proceeding.

As a result Tesla fails to state a claim for unjust enrichment, which requires that Tesla "show that the other party was enriched, at plaintiff's expense, and that 'it is against equity and good conscience to permit [the other party] to retain what is sought to be recovered.'" Georgia Malone & Co., Inc. v. Ralph Rieder, 86 A.D.3d 406, 408 (N.Y. App. Div. 2011) (quoting Mandarin Trading Ltd. v. Wildenstein, 16 N.Y.3d 173, 182 (2011)). Related was not enriched at Tesla's expense now that the monies at issue have been disgorged in the state court action.

Nor does Tesla state a claim for fraud, which requires that Tesla allege (1) a material misrepresentation or omission of fact (2) made by defendants with knowledge of its falsity (3) and intent to defraud, which (4) plaintiff reasonably relied on, (5) resulting in damage to plaintiff. Herzfeld v. JP Morgan Chase Bank, N.A., 354 F. App'x 488, 489 (2d Cir. 2009) (citations omitted).

Were Tesla to plead damages beyond the $3.3 million Related allegedly stole, Tesla might satisfy prong five. But Tesla includes no such pleading in its complaint. Tesla only alleges loss of the $3.3 million. See Am. Compl. ¶ 205 ("As a direct result of Related's fraudulent misrepresentations, the general contractor on

the 111 W. Wacker project paid Related $3.3 million owed Tesla");
id. ¶ 209 ("As a result of Related's misrepresentations, the
general contractor for the 111 W. Wacker project paid Related
approximately $3.3 million in contract proceeds that rightfully
belong to Tesla"); id. ¶ 210 ("Related was unjustly enriched at
Tesla's expense"); id. ¶ 211 ("It is against equity and good
conscience to permit Related to retain the $3.3 million that
rightfully belongs to Tesla. The Court should therefore disgorge
Related of those funds.").

Indeed, it would be hard for Tesla to prove any additional
harm as Tesla was purportedly a defunct entity in 2015, with
Related presumably holding a senior claim on any funds Tesla might
have recovered from the third-party contractor at that time.

Accordingly, defendants' motion to dismiss counts VIII and IX
of plaintiff's complaint is granted.

## II. **The Trade Secret Claims**

The remainder of plaintiff's claims relate to Related's
conduct prior to 2015 and its role in plaintiff's "demise."
Defendants move to dismiss these claims on various grounds
including improper claim splitting, laches, and failure to state
a claim. The Court considers each argument in turn:

### A. **Improper Claim Splitting**

Defendants argue that counts I, II, IV, V, VI, and VII of
plaintiff's complaint should be dismissed because Tesla was

11

required to bring such claims in its earlier lawsuit against Michael Budd. See Def. Mem. at 8.

"Claim-splitting is generally prohibited by the doctrine of res judicata, which bars parties to a prior action or those in privity with them from raising in a subsequent proceeding any claim that they could have raised in the prior one, where all of the claims arise from the same set of operative facts." In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig., 209 F.R.D. 323, 339 (S.D.N.Y. 2002) (citations omitted). "To decide if a later-filed suit is duplicative, courts examine whether the two proceedings involve the same (1) parties or their privies and (2) transactions or series of transactions." Roca Labs, Inc. v. Century Scis., LLC, No. 14 Civ. 60123, 2014 WL 11775477, at *3 (S.D. Fla. June 16, 2014). "In its modern form, the principle of privity bars relitigation of the same cause of action against a new defendant known by a plaintiff at the time of the first suit where the new defendant has a sufficiently close relationship to the original defendant to justify preclusion." Central Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A., 56 F.3d 359, 367-68 (2d Cir. 1995); see also Lacy v. Principi, 317 F. Supp. 2d 444, 447 (S.D.N.Y. 2004) ("When a party has litigated a claim to final judgment, that party cannot avoid the res judicata effect of that judgment by bringing suit against a new defendant that is in privity with the original defendant.").

Defendants argue that plaintiff's complaint seeks damages from Related and NHF for harm to Tesla arising from Budd joining Related and NHF. According to defendants, these are the same "transactions" and "occurrences" for which Tesla previously sought relief in Budd. Thus, defendants argue, plaintiff must prove that there is privity between Budd and defendants to recover on their trade secret claims. Def. Mem. at 11.

This argument mischaracterizes plaintiff's complaint in Budd, as well as the applicable law here. Though courts have routinely found privity between co-employees sued in separate suits over allegedly tortious acts that occurred during the course of their employment,[3] working together toward a common goal is insufficient to establish privity.

Related and NHF, defendants here, have distinct legal interests from Michael Budd. See Faiveley Transp. USA, Inc. v. Wabtec Corp., 758 F. Supp. 2d 211, 217 n.20 (S.D.N.Y. 2010) (noting that the "general rule of privity for purposes of res judicata 'is

---

[3] See, e.g., Amadsau v. Bronx Lebanon Hosp. Ctr., No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005), report and recommendation adopted sub nom. Amadasu v. Rosenberg, 2005 WL 954916 (S.D.N.Y. Apr. 26, 2005), aff'd, 225 F. App'x 32 (2d Cir. 2007). Courts have also found privity where plaintiffs brought claims against an employer in a prior suit and then brought suit against that employer's employees. See McCarroll v. U.S. Fed. Bureau of Prisons, No. 3:11 Civ. 934 (VLB), 2012 WL 3940346, at *8 (D. Conn. Sept. 10, 2012) (collecting cases) ("Courts have long recognized that privity exists between co-employees or employees and their employers for res judicata purposes"). Privity may also exist between corporate entities and their directors or trustees.

that one whose interests were adequately represented by another
vested with the authority of representation is bound by the
judgment'"). Indeed, Budd was initially in privity with plaintiff,
not defendants. In the earlier action, plaintiff brought claims
against Budd arising out of his violation of his non-compete, non-
disclosure agreement, and fiduciary obligations – Budd's, not
Related's, contractual obligations to Tesla. Here, Tesla brings
claims against Related arising out of a distinct set of legal
obligations that Related had to Tesla as its customer, part-owner,
and competitor. While Budd is undoubtedly a common denominator
between the two suits, and judicial economy would have been far
better served had Tesla brought its claims against all parties
simultaneously, defendants cite no authority for the proposition
that Tesla, on these facts, is not entitled to relief merely
because Tesla chose not to sue them three years ago.

As Budd was not defendants' privy in plaintiff's prior suit,
and the legal rights and obligations of Budd and Related are
separate and distinct, the Court finds no improper claim splitting
and denies defendants' motion to dismiss plaintiff's trade secret
claims on the basis of res judicata. See Burberry Ltd. v. Horowitz,
534 F. App'x 41, 46 (2d Cir. 2013) (noting that even if a
plaintiff's "right to relief arises from what is realistically
viewed as a single episode," plaintiff needn't join all the alleged
tortfeasors in one suit "unless there is privity among those

14

parties, for in that event separate suits against them are treated as the equivalent of separate suits against the same party").

**B. Laches**

Defendants also move to dismiss plaintiff's state law claims for unfair competition, tortious interference with contract, breach of fiduciary duty, and aiding and abetting breach of fiduciary duty on the grounds that these claims were filed outside the applicable limitations period. Murphy v. Morlitz, No. 15 Civ. 7256, 2017 WL 4221472, at *6 (S.D.N.Y. Sept. 21, 2017) ("[a] defendant may raise a limitations argument in a motion to dismiss 'if the defense appears on the face of the complaint'") (quoting Staehr v. Hartford Fin. Servs. Grp., Inc., 547 F.3d 406, 425 (2d Cir. 2008)).

In New York, defendants bear the burden of proving that Tesla's claims are untimely. See Voiceone Communic'ns, LLC v. Google Inc., No. 12 Civ. 9433 (PGG), 2014 WL 10936546, at *7 (S.D.N.Y. Mar. 31, 2014). Dismissal is appropriate only if "the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading." In re S. African Apartheid Litig., 617 F. Supp. 2d 228, 287 (S.D.N.Y. 2009) (internal quotations omitted).

To determine the applicable limitations period, the Court must apply the choice of law rules of the forum state, here New York. El-Hanafi v. United States, 40 F. Supp. 3d 358, 365 (S.D.N.Y.

15

2014) (citing Rogers v. Grimaldi, 875 F.2d 94, 1002 (2d Cir. 1989)). Under New York C.P.L.R. § 202, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued." Thea v. Kleinhandler, 807 F.3d 492, 497 (2d Cir. 2015) (quotation omitted).

Thus, for an action accruing outside New York, plaintiff must comply with the statute of limitations of two jurisdictions. Id.; see also Stuart v. Am. Cyanamid Co., 158 F.3d 622, 627 (2d Cir. 1998) (noting that "an action by a nonresident on a foreign cause of action is untimely if it is barred under the law of either New York or the state where the injury occurred").

Here, Tesla alleges purely economic injury and identifies itself as a resident of Nevada. See Am. Compl. ¶ 8. Accordingly, plaintiff's claims must be dismissed if they are time-barred under either New York or Nevada law. See Voiceone Communications, 2014 WL 10936546, at *9 (noting that "the residence of an LP or LLC is determined not by the citizenship of its members, but rather by the location of its principal office").

Although Tesla attempts to dispute its residency in Nevada – arguing that the pleadings merely state its residence at the time of the alleged injuries and that it will show ultimately that the

16

economic impact of its loss occurred in New York[4] – these arguments are wholly without merit.

There are no allegations in the complaint supporting Tesla's contention that its financial base is in New York. Moreover, the connection between defendants' conduct and New York is irrelevant to this question. There is also no evidence that Tesla's principal place of business is anywhere other than Nevada, which is what Tesla pleads in its complaint here, and in its 2014 complaint in Budd. See Budd, No. 14 Civ. 8564, Dkt. 1, Compl. ¶ 5.

As courts regularly grant motions made pursuant to § 202 based on the allegations, see, e.g., Luv N' Car, Ltd. v. Goldberg Cohen, LLP, the Court will apply both the Nevada and New York statute of limitations to evaluate the timeliness of plaintiff's claims. No. 16-3219, 2017 WL 3588274, at *1 (2d Cir. Aug. 21, 2017).

**(1) Count II: Unfair Competition**

Defendants argue that a three year limitations period on Count II began to toll as early as March 2014 when Budd tendered his resignation to Tesla and as late as July 2014 when communications between Budd and Tesla show that Tesla was aware that Budd had left Tesla to join Related. See N.R.S. 600A.080 ("[a]n action for

---

[4] See Pl. Mem. at 14 (arguing that its loss was sustained in New York because "Related resides and operates from New York," "the Hudson Yards projects that were among the primary reasons for Tesla's creation were in New York," "Tesla was awarded work in and from New York," and "a litany of wrongful acts were committed and orchestrated by Related in and from New York").

17

misappropriation must be brought within 3 years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered").

Defendants point to a May 2, 2014 letter from Tesla to Budd, incorporated by reference in plaintiff's complaint, see Am. Compl. ¶ 4, which states in relevant part: "You have engaged in self-dealing activities with Related Limited Partners, a customer of the Company, during your term as President of the Company and that you intend to work for them after leaving the Company." See Budd, Compl. ¶ 36; id. Ex. D. Thus, defendants argue, plaintiff knew or should have discovered the facts upon which it bases its claim prior to August 2014. See Glob. Advanced Metals USA, Inc. v. Kemet Blue Powder Corp., No. 11 Civ. 793 (RCJ), 2013 WL 2319348, at *3 (D. Nev. May 28, 2013).

But defendants do not point to any allegations in the complaint that establish that Tesla knew by July 2014 that Related had established NHF or awarded it contracts for four projects. Where it is not apparent from the face of the complaint that plaintiff's claim is time barred, defendants cannot prevail on a motion to dismiss on that basis. See In re Amerco Derivative Litig., 127 Nev. 196, 228 (2011) ("[w]hen the plaintiff knew or in the exercise of proper diligence should have known of the facts constituting the elements of his cause of action is a question for the trier of fact") (internal quotations omitted). As Tesla

18

plausibly claims that it did not learn of Related's efforts to
recruit its other employees or acquire misappropriated information
until after discovery commenced in Budd, the Court denies
defendants' motion to dismiss count II on that basis without
prejudice to defendants making an affirmative defense of laches
following discovery.

### (2)  Count IV: Tortious Interference With Contract

A three years statute of limitations period – triggered upon
breach of the contract at issue – applies to plaintiff's tortious
interference claim. See Stalk v. Mushkin, 125 Nev. 21, 27 (2009)
(citing N.R.S. 11.190(3)(c)).

While Tesla certainly discovered far more information
regarding defendants' alleged wrongful acts during the course of
discovery in Budd, Tesla knew the essential facts giving rise to
their tortious interference claim in July 2014. Specifically,
Tesla knew that Budd had left to join Related in contravention of
a contract Related had approved which included anti-competition,
anti-solicitation, and confidentiality clauses.

The Court rejects plaintiff's general argument, see Pl. Mem.
at 18-19, that it has plead facts sufficient to warrant equitable
tolling of its trade secret claims. See Cantor Fitzgerald Inc. v.
Lutnick, 313 F.3d 704, 710-13 (2d Cir. 2002) (applying Nevada law
and rejecting plaintiff's attempt to assert equitable tolling in
opposition to motion to dismiss where plaintiff was on "inquiry

notice"); Putter v. N. Shore Univ. Hosp., 7 N.Y.3d 548, 553 (2006) (rejecting invocation of equitable tolling in opposition to motion to dismiss based on plaintiff's "level of awareness and subsequent inaction"). Moreover, Tesla does not address these issues in its answering papers. See Romeo & Juliette Laser Hair Removal, Inc. v. Assara I LLC, No. 08 Civ. 442 (TPG) (FM), 2014 WL 4723299, at *7 (S.D.N.Y. Sept. 23, 2014) ("At the motion to dismiss stage . . . a plaintiff abandons a claim by failing to address the defendant's arguments in support of dismissing that claim").

Accordingly, as the relevant contract was breached in March 2014, and Tesla knew of the breach as early as May, the Court dismisses plaintiff's tortious interference claim as time barred.

**(3) Count V: Breach of Fiduciary Duty**

A breach of fiduciary duty claim is subject to a three year statute of limitations, accruing when plaintiff "knew or reasonably should have known facts giving rise to [the] alleged breach of fiduciary duty." Shupe v. Ham, 98 Nev. 61, 65 (1982).

Tesla alleges the Related breached its fiduciary duties to Tesla by, inter alia, using Tesla's confidential information for its own benefit, using Tesla's property, planning, forming, purchasing, staffing, and operating a building façade company to compete with Tesla, interfering with Tesla's current and prospective business relationships, and colluding with Michael Budd. See Am. Compl. ¶¶ 85, 94, 104, 118, 187.

20

Defendants argue that Tesla knew or should have known of Related's alleged breach by July 2014. But as with plaintiff's claim for unfair competition, plaintiff's claim for breach of fiduciary duty involves far more than mere allegations that Related hired Budd in violation of his non-compete. Tesla's complaint here includes allegations that Related fraudulently concealed its efforts to form a competing curtain wall company, see id. ¶ 187, hid information it had a duty to disclose, see id. ¶¶ 85, 104, 118, and induced Budd to solicit its employees, see id. ¶ 94. There are no allegations in the complaint suggesting that Tesla was aware of these transgressions prior to August 2014. Therefore, the court denies defendants' motion to dismiss count V on this basis, without prejudice to defendants making an affirmative defense of laches following discovery.

**(4)   Count VI: Aiding and Abetting Breach of Fiduciary Duty**

Defendants argue that Tesla's aiding and abetting Budd's breach of fiduciary duty claim is time barred.

Under New York law, "[a] claim that a person aided and abetted a tort is governed by the same statute of limitations that is applicable to the underlying tort allegedly aided and abetted." Hudson v. Delta Kew Holding Corp., 992 N.Y.S.2d 158 (Sup. Ct. 2014) (citation omitted); accord Access Point Med., LLC v. Mandell, 106 A.D.3d 40, 46 (N.Y. App. Div. 2013).

The parties stipulate for purposes of this motion that plaintiff's aiding and abetting claim elapses after three years following either plaintiff's injury or when plaintiff knows or has reason to know the facts supporting its claim. See Pl. Mem. at 18.

Tesla was aware prior to August 2014 that Budd had breached his contractual obligations, because Tesla knew that Budd had left Tesla to join Related. But it is not clear from the face of the complaint that Tesla knew that Related and Budd had breached his fiduciary duties with the aid of Related by developing NHF while he was still employed at Tesla. Therefore, the Court denies defendants' motion to dismiss count VI as time barred, without prejudice to defendants making an affirmative defense of laches following discovery.

## C. Failure to State a Claim

Defendants move in the alternative to dismiss counts I and VII for failure to state a claim pursuant to Rule 12(b)(6):

### (1) Count I: DTSA Violation

The Defend Trade Secrets Act ("DTSA") creates a federal claim for misappropriation of trade secrets.

A trade secret is defined as, inter alia, technical information, including "programs," "processes," and "codes," if (A) "the owner thereof has taken reasonable measures to keep such information secret; and (B) "the information derives independent economic value . . . from not being generally known . . . [or]

22

readily ascertainable . . . [to] another person who can obtain economic value from the disclosure or use of the information." Syntel Sterling Best Shores Mauritius Ltd. v. Trizetto Grp., Inc., No. 15 Civ. 211 (LGS) (RLE), 2016 WL 5338550, at *6 (S.D.N.Y. Sept. 23, 2016) (quoting 18 U.S.C. § 1839(3)(A)-(B)).

Defendants argue that plaintiff's DTSA claim should be dismissed because Tesla offers only vague and conclusory allegations as to what purportedly constitute its trade secrets. See Dennis v. Zuckerberg, No. 4:17 Civ. 670, 2017 WL 3873761, at *2 (N.D. Ohio Sept. 5, 2017) (holding that plaintiff's "conclusory allegations that Defendants violated multiple trade secret laws by using 'proprietary business information owned by the Plaintiff' without Plaintiff's consent" were insufficient to "afford Defendants fair notice of the grounds on which Plaintiff's claims rest").

But Tesla's complaint is highly specific regarding defendants' course of conduct, pleads numerous specific categories of information, such as "technical data, internal pricing information, work product, research, engineering designs," etc., Am. Compl. ¶ 110, and includes email evidence suggesting that defendants believed Tesla had valuable trade secret information. See id. ¶ 41 ("What is proprietary is what [Tesla] buys, how [Tesla] pays for it, and how [Tesla] deals with the transactions . . . The product outflow from China for 500 NLSD [a Tesla-Related

building project in Chicago] has been amazing, we have not had a single hold up . . . it is not being propagated within the industry, so [Tesla's] proprietary methods are kept confidential.").

Moreover, there is no heightened pleading requirement on actions brought under the DTSA. See Chubb Ina Holdings Inc. v. Chang, No. 16 Civ. 2354 (BRM) (DEA), 2017 WL 499682, at *10 (D.N.J. Feb. 7, 2017) ("there is no heightened pleading standard for a [DTSA] claim") (internal quotation omitted). Thus, "trade secrets need not be disclosed in detail in a complaint alleging misappropriation." Mission Measurement Corp. v. Blackbaud, Inc., 216 F. Supp. 3d 915, 921 (N.D. Ill. 2016) (quotation omitted). The Court therefore declines to dismiss count I on this basis.

Separately, defendants argue that plaintiff's DTSA claim should be restricted, as the DTSA "applies only to acts of misappropriation that occur on or after the date of the enactment of th[e] Act, May 11, 2016." Champions League, Inc. v. Woodard, 224 F. Supp. 3d 317, 326 (S.D.N.Y. 2016) (internal quotation omitted). See also Syntel Sterling, 2016 WL 5338550, at *6 (as claimants "allege that Syntel continues to use its Intellectual Property to directly compete with [claimants], the wrongful act continues to occur after the date of the enactment of DTSA").

"Misappropriation" is defined within DTSA as an unconsented disclosure or use of a trade secret by one who (i) used improper means to acquire the secret, or, (ii) at the time of disclosure,

24

knew or had reason to know that the trade secret was acquired through improper means, under circumstances giving rise to a duty to maintain the secrecy of the trade secret, or derived from or through a person who owed such a duty. Syntel Sterling, 2016 WL 5338550, at *6 (citing 18 U.S.C. § 1839(5)).

Tesla clearly alleges that "Defendants' misappropriation of Tesla's trade secrets is ongoing." Am. Compl. ¶ 121. See also id. ("They continue using Tesla's trade secrets to obtain business as a result of their misappropriation."); id. ¶ 153 ("Tesla has suffered and will continue to suffer damages."). Additionally, Tesla states a plausible claim arising out of defendants' pre-enactment conduct. Moreover, defendants appear to concede that as long as plaintiff continues to use trade secrets acquired wrongfully prior to enactment, the Act's requirements are met.

If Tesla is able to substantiate its allegations, it is likely to be able to show an "act of misappropriation" occurring after 2016 in the form of defendants continued use of its trade secrets. Thus, the question is whether Tesla should be allowed to recover for damages that occurred as a result of its pre-enactment use of Tesla's trade secrets – an issue which the parties suggest has not been reached previously by other courts. See Pl. Mem. at 22.

For now, the Court finds that this question is not ripe. If, following discovery, Tesla is able to prove both pre- and post-enactment damages, Tesla will be permitted to argue that it can

collect for both injuries. Likewise, if Tesla makes such an argument, Related may argue that, regardless of whether Tesla can prove these damages, it cannot collect for any of the damages it experienced pre-enactment. The Court therefore denies defendants' motion to dismiss count I without prejudice to the parties taking up these further issues on summary judgment or at trial.

### (2) Count VII: Good Faith and Fair Dealing Breach

The seventh count of plaintiff's complaint seeks to recover damages for Related's alleged breach of the covenant of good faith and fair dealing. Tesla voluntarily "withdraws" this claim in its answering papers. See Pl. Mem. at 19.

### III. CONCLUSION

For the reasons set forth above, the Court hereby grants defendants' motion to dismiss counts III, IV, VIII, and IX of plaintiffs' amended complaint and denies defendants' motion to dismiss counts I, II, V, and VI. As plaintiff has withdrawn count VII, the Court finds that defendants' motion to dismiss that claim is moot.

The Clerk of Court is hereby instructed to close docket entry number 22.

SO ORDERED.

Dated:    New York, NY
          December 15, 2017                    JED S. RAKOFF, U.S.D.J.